Lawrence, J.
Upon the trial it was conceded that the plaintiff was chargeable with the sum of $2,029.10 paid to the assignee of Fitch as set up in the answer; and the principal questions arising in the case are, therefore, whether the plaintiff is entitled to any sums in addition to the contract price agreed upon, and whether there was evidence on the part of the defense sufficient to establish the first counter-claim, the court having directed that the second counter-claim set up in the defendants’ additional answer should be dismissed.
It is admitted by the defendants that the balance remaining due and certified by the engineer in charge of the work, after making the deductions claimed by the city, amounted to the sum of $256.70. But it is claimed by the appellant that the charge of $3,642 for inspection was wrongfully imposed by the defendants while the contract was delayed by the act of their engineer. And it is further claimed that the sum of $10,000 damages was caused by the act of the defendant in giving to the contractor wrong grades, which imposed upon him an immense increase of cost in doing the work, over and above contract price.
It does not seem to be disputed that the plaintiff’s assignor was paid under the terms of the contract for any additional labor and expense to which he was put in consequence of any error which may have been committed by *88 the engineer, Leonard, in regard to the depth of the excavation. But the plaintiff contends that as'such excation cost more and was reasonably worth a price in excess of the contract price, the learned judge before whom the case was tried erred in excluding evidence upon the question as to the actual value of such additional excavation.
Upon turning to the contract it will be found that it contains the following provision:
And the said party of the second part hereby further agrees, that in case the grade of the street shall be changed during the progress of the work, or any other modification of the said work shall be ordered by the Commissioner of Public Works, that he will conform to the altered grade- or other modifications of the work at the prices specified herein, as far as they are applicable, and for any work, the price of which is not specified in this contract, the provisions herein contained in relation to extra work shall apply.
The contract further provides as follows:
“And the said party of the second part hereby further agrees, that in case any work is required to be done in order to carry out the provisions of .this agreement, which is not called for in the specifications, that he will go on and do the same without any claim for extra compensation therefor, unless ordered in writing by the commissioner of public works to do the same as extra work, and a price therefor agreed upon previously to its commencement.”
It is not claimed in this case that the work alleged to have been done by the contractor in consequence of the alleged error of Leonard, was ordered to be done by the commissioner of public works as extra work.
It seems to us, therefore, that the provision above referred to, that if the grade should be altered, or modifications of the work should be required, the work attendant thereupon should be performed at the prices specified in the contract for similar work, applies; and that as it is conceded that for such additional work the assignor of the plaintiff has been paid at the contract rate, no further claim can be made by the plaintiff upon the city.
It is contended on the part .of the respondents that under the contract 'no obligation rests upon the city to furnish grades to the contractor; and that when the plaintiffs-assignor had completed his work, it was the business of the engineer appointed by the commissioner of public works to-give to him a certificate of such completion; and in case of a refusal to give such certificate, if in point of fact the street was regulated according to the profile, the contractor would have been entitled to recover without a certificate, upon the ground that such refusal was unreasonable. Andl *89 the cases of The Bowery National Bank v. The Mayor, etc. (63 N. Y., 337) and Bancker v. The Mayor, etc. (8 Hun, 409) are cited. It does not, however, seem to us necessary in this case to definitely determine the question whether under the contract the city was bound to furnish an engineer to give to the plaintiffs’ assignor the grade fine of the street. And our reasons are these: The learned justice before whom the case was tried, while holding that the city was under no obligation to furnish grades, distinctly charged the jury that if the city undertook the duty to furnish grades and said they would, and allowed the contractor to believe they would, then the contractor is excused for any delay arising because of the city’s failure to do that which they undertook to do and induced him to wait until they should. He also distinctly submitted to the jury the question whether the contractor could go on and complete this work without any grade lines at all until he came to the finishing of the work to arrange the line of the curb and decide what the subgrade should be.
He also charged the jury as follows: “It is for you to determine as to how far the contractor has excused the fact of the delay in the work. If he has been unable for all the time he has been unable to complete, by reason of the failure, or any failure of Mr. Leonard to furnish this information, if it was necessary for him to furnish it in order that he might go on with the work, for that amount the contractor in this case is entitled to any allowance upon this question of inspectors’ fees. Inspectors’ fees have been charged to him from the 10th of August, 1880, down, to the 4th of September, 1884. Upon an inspection of the inspectors’ books there seems to have been found that certain work was not done and that would account for the difference between the whole amount of working days between the 10th of August, 1880, and the 4th of September, 1884; but for every day that it was possible to do work the inspectors’ fees were charged, and the amount which was charged was 1214 days, amounting in all to $3,642. If Mr. Mulholland, the contractor, has excused the delay in the prosecution of this work, under the principles I have given, then, whatever amount he has excused, he is entitled to recover from the city on account of these inspectors’ fees. They are charged to him at the rate of three dollars a day, and he would be entitled to recover in addition to the $256.70, for just so many days as he is excused for the delay in the work, at three dollars a day.”
It seems to us that under the charge of the learned judge irrespective of the question whether the obligation rested upon the city to give grade lines to the contractor or not, *90 the question was fairly submitted to the jury as to whether the delay in fulfilling the contract on the part of the plaintiffs’ assignor was due to the neglect of the defendant’s engineer, or to that of the contractor. It must be assumed from the verdict of the jury that the jury found that the delay was caused by the neglect of the plaintiffs assignor, and not by that .of the defendant’s engineer; and as the evidence is conflicting, under well-settled principles this court cannot interfere upon appeal. Beckwith v. N. Y. C. and H. R. R. Co., 64 Barb., 308.
The evidence in the case undoubtedly shows that the contractor before the passage of the act of 1880, hereinbefore referred to, was in default; and that even after that act he was not within the limit of time permitted to those who were in default, for the completion of their contracts. A work which was to have been completed within 300 days from November 9, 1877, was not completed until about .seven years after the execution of the contract. We do not think that the court should be astute to criticise the verdict of a jury in substance finding under such circumstances that the contractor is not entitled to relief.
We also agree with the counsel to the corporation that there was evidence on the part of the defense sufficient to establish the counter-claim for the price of 990 cubic yards of rock, which have been paid for in excess of the amount actually excavated; and that as this testimony was submitted to the jury, and must have entered into their consideration in arriving at the result which they reached, the court would not be justified in interfering with their verdict. The question as to that counter-claim was fairly submitted to the jury by the learned judge, and they must have understood the point which was presented to them.
Many exceptions were taken, during the progress of the trial, to the rulings of the court in regard to the admission and exclusion of evidence. We deem it sufficient to say that we have examined them all; and that in the view which we have taken of the general features of the case we are not prepared to hold that any of those rulings, even if erroneous, could have affected the result attained by the jury.
For these reasons we are of the opinion that the judgment of the court below should be affirmed.
Potter, J., concurs.